UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERRY and TANISHA HOWARD, Individually and as Parents and Next Friends of NATALYA RENEE HOWARD, | ) ) ) ) |
| Plaintiffs | ) ) Case 3:13-0299 |
| v. | ) Judge Nixon/Brown ) Jury Demand ) |
| DAVID A. REED, | ) ) |
| Defendant | ) |

## INITIAL CASE MANAGEMENT ORDER

Pursuant to Local Rule 16.01(d)(2), the following Initial Case Management Plan is **adopted**.

I. **Jurisdiction and Venue**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as Plaintiffs Terry and Tanisha Howard bring claims under the federal Residential Lead-Based Paint Hazard Reduction Act ("RLPHRA"), 42 USC § 4852d(a) *et seq.* Venue is proper under 28 U.S.C. § 1391(a) and 1391(b) as the defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated or occurred in Nashville, Davidson County, Tennessee, which is located in the Middle District of Tennessee. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C § 1367.

II. **Service of Process & Answer**

The Defendant has been served and an Answer has been filed.

1

## III. Parties' Theories of the Case

### A. Plaintiffs' Theory of the Case.

This is a lead paint/lead poisoning case in which a landlord, Mr. David Reed, the sole defendant, leased a house in Nashville, Tennessee that was built in the 1930s and had lead paint. Although federal laws and EPA regulations specifically require that certain mandatory disclosures be made in writing at the time of the lease, it is undisputed that Mr. Howard (and his wife) did not receive the requisite disclosures and pamphlet required by federal law and regulations. Jurisdiction is premised on violation of Federal Lead-Based Paint Hazard Reduction Act, 42 U.S.C.A. 4851, *et seq.* (hereafter "RLPHRA").

In addition, under state law (Tennessee) the unexcused violation of a statutory duty constitutes negligence *per se* if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation. Thus, both the parents and the minor child have a cause of action against Mr. Reed for negligence *per se*. *See Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994).

The disclosures mandated by federal law pursuant to the provisions of RLPHRA specifically state that the Secretary of the Department of Housing and Urban Development (HUD) and the Administrator of the Environmental Protection Agency (EPA) shall promulgate regulations concerning the disclosure of lead-based paint hazards in "target housing," defined as housing built prior to 1978 with limited exception, which is offered for

lease or sale. 42 U.S.C. §§ 4851b(27) & 4852(a)(1). These regulations have been codified at 40 CFR § 745 and 24 CFR § 35. RLPHRA provides, in relevant part:

> The regulations shall require that, before the purchaser or lessee is obligated under any contract to purchase or lease the housing, the seller or lessor shall:
>
> (A) provide the purchaser or lessee with a lead hazard information pamphlet, as prescribed by the Administrator of the Environmental Protection Agency under section 406 of the Toxic Substances Control Act [15 U.S.C. 2686];
>
> (B) disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide to the purchaser or lessee any lead hazard evaluation report available to the seller or lessor; and
>
> (C) permit the purchaser a 10-day period (unless the parties mutually agree upon a different period of time) to conduct a risk assessment or inspection for the presence of lead-based paint hazards.
>
> § 4852d(a)(1); 40 C.F.R. § 745.107.

The regulations also require each contract to lease target housing to include certain warning and disclosure language and an affirmation by the lessee that he has received the information. 40 C.F.R. § 745.113(b). The statute contemplates a private right of action for violations, stating that "[a]ny person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual." 42 U.S.C. § 4852d(b)(3) (emphasis added).

In order to demonstrate a violation of the statute, a plaintiff must show that: (1) he was a lessee; (2) defendant was a lessor who failed to make the proper disclosures under 40 C.F.R. § 745.107; (3) the leased property was target housing; and (4) the lease contract was signed

3

after the regulatory effective dates. *Sipes, ex rel. Slaughter v. Russell,* 89 F. Supp.2d 1199, 1202-03 (D. Kan. 2000).

It is undisputed that Mr. Reed did not give the Howards the pamphlet regarding lead-based paint, disclose the presence of any known lead-based paint, permit them to conduct a risk assessment of the house, or provide the required language in the lease. Thus, Mr. Reed clearly violated 42 U.S.C. § 4852d(a)(1). The federal law, however, requires for the federal cause of action for damages, that there is "knowing" component to the violation. Mr. Reed has answered asserting that he had no knowledge of any lead-based paint or disclosure requirements and is therefore not liable for damages under the federal cause of action under RLPHRA. Plaintiffs assert this is a fact question for discovery, especially as Mr. Reed owns many rental properties and enlisted the services of attorneys in some of these transactions.

Even if the federal cause of action under RLPHRA is not supported by the evidence after discovery, the fact remains that the failures to provide the necessary/mandated federal disclosures are violations of the federal RLPHRA and EPA regulations and therefore fully support Plaintiffs' state claims under negligence *per se. Bellamy v. Federal Exp. Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988) (OSHA violations actionable under Tennessee negligence *per se* law). The regulations state that "[f]ailure or refusal to comply" with provisions requiring the lessor to give the lessee the EPA pamphlet, the opportunity to conduct an assessment, or include the lead warning statement and acknowledgement of disclosure in the lease, "is a violation" of the RLPHRA, 40 C.F.R. § 745.118(e), subject to a penalty of not more than $ 10,000 for each violation, 40 C.F.R. § 745.118(f). Knowledge is not a requirement for

4

imposition of these sanctions, and it is undisputed Reed violated three separate sections of the RLPHRA by not providing the Howards with the pamphlet, the opportunity for an assessment, or the required lease language. A case of remarkable similarity to the case at bar is the decision *Erwin v. Roe*, 928 N.E.2d 609 (Ind. Ct. App. 2010) in which the court held that the federal violations of RLPHRA and EPA regulations made the lessor liable under Indiana state negligence *per se* law even if the proof showed no federal cause of action because the lessor did not "knowingly" violate RLPHRA and EPA regulations. *Accord*: *Price v. Hickory Point Bank & Trust,* 362 Ill. App. 3d 1211 (Ill. App. Ct. 4th Dist. 2006).

Plaintiffs have also advanced state-law claims against Mr. Reed for: violations of Tennessee's Residential Landlord-Tenant Statutes (Count II); negligence (Count III); failure to warn (Count IV); gross negligence, recklessness and negligence *per se* (Count V); and private nuisance under T.C.A. § 29-3-114 (Count VI).

Under the federal RLPHRA the minor child likely has no independent cause of action under Sixth Circuit precedent, *Roberts v. Hamer*, 655 F.3d 578 (6th Cir. Ky. 2011), however, the Howards (parents) would have a claim if a knowing violations were proven. Another issue is the statute of limitations for the parents' claims. The issue of whether there is a federal four year statute of limitations for the RLPHRA claim and whether it runs from the date of lease (which would bar Plaintiffs' RLPHRA claims) with no discovery rule (thus barring the RLPHRA claim) is somewhat unsettled with little case law on the subject. *Compare Gross v. Max*, 2012 U.S. Dist. LEXIS 155173 (N.D. Ind. Oct. 30, 2012) (four year statute, no

5

discovery rule for RLPHRA claim); *Randall v. Laconia*, NH, 679 F.3d 1 (1st Cir. N.H. 2012) (applying discovery rule to RLPHA claims).

Under the state-law claims, however, there is no limitations issue (lead paint discovery was July 11, 2012 and child's claim are tolled by minority) and the child and parents may recover personal injury damages for the lead poisoning to the minor child as well damages, costs and losses to the parents. The child's state-law claims are also tolled by her incapacity under Tennessee's tolling disability statute. Tenn. Code Ann. § 28-1-106.

Under the circumstances of the case discovery should first proceed on the issue of notice or knowledge of the Defendant (Mr. Reed). The parties have also discussed mediation.

### B. Defendant's Theory of the Case

Defendant anticipates filing a motion to dismiss in that the Plaintiffs' actions are barred, in whole or in part, by the applicable statues of limitations. Plaintiff, Terry Howard, entered into a Lease for the Property beginning June 1, 2005. The starting point for determining when a claim accrues is the alleged unlawful conduct of Defendant. Under the Federal statute of limitations in 28 U.S.C. § 1658, Plaintiff had four (4) years after the cause of action accrues, which expired in June 2010.

In order to establish negligence under Tennessee law three elements must be established: "(1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff which was proximately caused by the defendant's breach of a duty." *Dooley v. Everett*, 805 S.W.2d 380, 383 (Tenn.Ct.App.1990) (quoting *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 858 (Tenn.1985)).

The Plaintiffs claim that the Defendant's actions rise to the level of gross negligence. To prevail on a claim of gross negligence in Tennessee, a plaintiff must demonstrate ordinary negligence and must then prove that the defendant acted "with utter unconcern for the safety of others, or . . . with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law," *Odum v. Haynes*, 494 S.W.2d 795, 807 (Tenn.Ct.App.1972), or from "a conscious neglect of duty or a callous indifference to consequences . . . . [or] such entire want of care as would raise a presumption of a conscious indifference to consequences," *Buckner v. Varner*, 793 S.W.2d 939, 941 (Tenn.Ct.App.1990) (quotation omitted, alteration in original). The Plaintiffs have failed to provide sufficient evidence indicating that the Defendant acted with such a recklessness or a conscious neglect of a duty.

Defendant specifically denies that any act or omission of Defendant was a proximate cause or cause in fact of any damage alleged by Plaintiffs. Plaintiff, Terry Howard, typically paid his rent to Defendant in person each month and at that time would notify Defendant of any repairs needed on Property–which repairs Defendant would timely respond to and correct. At no time did Plaintiffs notify Defendant of any interior or exterior paint chipping or of any concern that the minor child was eating paint chips. Defendant exercised due care relating to the Property stated in the Complaint, and therefore did not violate any legal duty to Plaintiffs.

Defendant alleges that all matters and things complained of in this Complaint resulted from the Plaintiffs' failure to maintain a clean and orderly household as a reasonable prudent person as evidenced by the three (3) tons of trash hauled away from the Property after the Plaintiffs finally vacated, as evidenced by the three (3) separate Metro Codes violations, and as evidenced by the Plaintiffs' own photographs of the Property from their own hired inspectors.

Plaintiffs failed to mitigate damages, if any, by failing to maintain proper and reasonable health standards both inside and outside of the Property

Defendant alleges that all matters and things complained of in this Complaint resulted from the Plaintiffs' failure to notify Defendant that a child was living on the Property in direct violation of the Lease.

Defendant alleges that all matters and things complained of in this Company resulted from Plaintiffs' failure to properly supervise the minor child as a reasonable parent. Furthermore, Plaintiffs failed to mitigate damages, if any, by refusing to vacate the Property upon learning from the minor child's medical provider of potential lead paint exposure. Plaintiffs had knowledge of potential lead paint exposure from their medical provider during the minor child's first year well-baby checkup and failed to notify Defendant of this potential exposure. Plaintiffs also informed their medical provider that the minor child was eating paint chips so by the Plaintiffs' own admission, they knew the child was in danger and failed to notify Defendant, failed to properly supervise the minor child, and failed to vacate the Property.

. Under the Doctrine of Comparative Fault, such negligence on the part of the Plaintiffs operate as a bar to, or in mitigation of, any recovery against Defendant in this cause, and accordingly all claims are barred under Tennessee law.

Defendant states that the Plaintiffs' claim for a recovery for 'medical expenses' fails to state a claim upon which relief can be granted. Pursuant to T.C.A. § 29-26-199, any claim for such damages is limited to paid medical expense as a potential economic loss.

Defendant denies knowledge that he was required to provide any disclosure regarding potential lead paint exposure to Plaintiffs. At the time of his purchase of the Property, Defendant was not provided with any notice, form, pamphlet, information or disclosure of lead paint in or

8

Case 3:13-cv-00299 Document 14 Filed 06/17/13 Page 8 of 10 PageID #: 105

on the Property. The Property had been in Defendant's family for generations and Defendant had no reason to believe there was any potential harm. Therefore, Defendant did not knowingly violate Residential Lead-Based Paint Hazard Reduction Act ("RLPHRA"), and/or EPA regulations.

Accordingly, Defendant denies he is legally responsible to Plaintiffs for any sum of money under any legal theory.

## IV. Discovery

a. Mandatory Initial Disclosures. Pursuant to Fed. R. Civ. P. 26(a)(1), all parties must make their initial disclosures within **60 days** after the initial case management conference.

b. Fact Discovery on the issue of Mr. Reed's knowledge *vel non* of lead paint in the home and the lead paint disclosure requirements is to be completed by **July 15, 2013**.

c. Fact Discovery on all other issues is to be completed by **March 1, 2014**.

d. Deadline for filing discovery-related motions: **March 1, 2014**. Prior to filing any discovery-related motions, the party will schedule and conduct a telephone conference with the Magistrate Judge. The counsel requesting the conference call shall check with opposing counsel as to their availability before setting a time certain with the Magistrate Judge.

## V. Expert Witnesses

a. Plaintiffs shall disclose all experts with reports by **January 13, 2014**.

b. Defendants shall disclose all experts with reports by **February 19, 2014**.

c. Expert depositions will be completed by **March 31, 2014**.

9

## VI. Dispositive Motions

a. All dispositive motions are to be filed by **December 15, 2014**. Responses to dispositive motions shall be filed within **28 days** after service. Briefs shall not exceed **25 pages** without leave of Court. Optional replies, limited to **five pages**, shall be filed within **14 days** after service of the response. If dispositive motions are filed early, the response and reply dates are moved up accordingly.

## VII. Motions to Amend Pleadings.

Shall be filed no later than **January 6, 2014**.

## VIII. Subsequent Case Management Conference.

A telephone conference will be set after a decision on the statute of limitations is reached. The parties will submit a response on alternative dispute resolution on or before **October 11, 2013**.

## VIII. Pretrial Conference and Trial Date.

The parties estimate that this jury trial will take four to five days, depending on what issues remain for trial. After consulting with Judge Nixon's courtroom deputy, this matter is set for trial on **August 26, 2014, at 9:00 a.m.** Judge Nixon will conduct the final pretrial conference on **August 15, 2014, at 10:00 a.m.** Judge Nixon will issue a separate order covering his requirements for the final pretrial conference and the trial.

## VII. Modification.

This order may be modified for good cause.

It is so **ORDERED**

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge

10